And then the action seems to move, because it's not continuous footage, and it jumps, as you all well know, between the different points of view of the different cameras. There seems to be a large collection of officers outside the holding cell, and then it moves into that little alcove which seems to be the head of another hallway, and then we see a lot of action there. Reading Mr. Lolli's testimony about the incident, he suggests that he was standing in the holding cell, very agitated because of his concern about the diabetic incident and his unmet needs, and that he was grabbed while there were a group of officers in the holding cell, and he was grabbed, and this whole incident started inside the holding cell. I was, before I watched the videotape, concerned as to why there wasn't any proffer of evidence from anybody other than the officers inside the holding cell, because this comes down to his word against that of all of the sheriff's deputies, and the thrust of your case is that this excessive force began right at the outset. Was there any effort to get corroborating witnesses from those who were in the holding cell and could have seen the inception of this? Yes, I believe there was. Now, I'm speaking for the prior counsel that had this case before I, because the first time I was on this case was at the hearing on the summary judgment, but I believe there were efforts made in discovery, and they were unsuccessful efforts made to determine the names of the witnesses that were in the holding cell. There should, from our point of view, there should be a record of who was in that holding cell, and there should be some way to reconstruct who was in that holding cell before they got assigned to other cells, and the one thing that we'd like to do on remand is try to work a little bit harder to see if there isn't some way to do that. We find it very hard to believe that they were unable to turn over the names and identities of the people that were in the cell. Nonetheless, notwithstanding that those other inmates aren't present in the record, you do have the one witness who is plaintiff, and his testimony is competent evidence that must be credited on a motion like this. But not only is his evidence not only a fact of evidence. Roberts. You're here on a motion for summary judgment, so I assume your argument is that there are factual issues here that cannot be resolved in summary judgment. That's right.  All right. And I would say that his testimony, that evidence in and of itself is sufficient to defeat summary judgment. But it's also in part made more credible by reference to the two first deputies that had contact with him. For example, Mr. Deputy Defendant Walker said that he reached in and grabbed him, too. Now, according to Deputy Walker, the reason that he grabbed him was originally Mr. Lolly would not sit down, so that when he told him to come over here, he wasn't going to wait. He didn't have time to see if he was going to comply with his order. He actually reached out and grabbed him. Now, the next deputy that was there was Ken, said something that's entirely contradictory. He said, yeah, I was there and watching, and what was happening was Lolly was refusing to come forward. Now, those are two different scenarios, and it's a pretty important moment because in this particular case, he's not violating any law and he's not violating any order. And actually, I don't even think the deputies can get consistent on what it was that was the offending conduct that would lead to this kind of brutality and force. Counsel, I want to go to the second issue, which I think is a little more difficult for you, and that is the question of indifference to medical needs. Was there any showing here that there was actual knowledge on the part of the officials that were nearby of the condition? Yes. What about the nurse, for example? Well, first of all, he gave, when he was pulled over, he was, he gave that information to the police officer. The police officer promised to get him there quickly. When he got there at the intake, he gave that information. That information is recorded in the record on the intake. So the first thing that he did was tell somebody, and that became a medical document. I can even give you the site if you like. I'll try to do this fairly quickly. You're down to your three minutes if you want to say something. Okay. Well, then the point then is if his testimony is to be believed, he was telling those police officers, this person who we know has been a diabetic since he's been diagnosed, he was telling them this is why he needed the food, and every single officer just said, oh, he was asking for food, and he was asking for it in a rude way. But of course he was asking for food. Okay. But you didn't sue the nurse, as I understand it. Is that correct? That's correct. Wouldn't the nurse be the only person that would be in a position to actually provide or respond to a medical request? No. In this particular case, someone's cutting that nurse off. And in this particular case, the first nurse indicated that a sandwich would be coming. But when Mr. Lally talked to the deputies, the only person between the only way that he could receive that food, instead he got the quote-unquote Holiday Inn treatment. He got beaten for his efforts. So if somebody's asking a deputy for food and telling them that they need the food because they're diabetic and they get beaten instead, I would say that that does violate his rights, and that is deliberate indifference to his need for food and medical care. I'm not sure Holiday Inn would appreciate being the label for police brutality. May it please the Court. Good morning, Your Honors. Albert Balog on behalf of the Appellees and Defendants and its County of Orange. As it's documented here, I think it's City of Orange, but it is the County of Orange. Sheriff Michael Corona, Assistant Sheriff John Hewitt, two Orange County Sheriff's Sergeants, and five Orange County Sheriff's deputies. I just, as a point of clarity, want to touch on two points just in my time allotted. The first point has to do with what we're here for. You've indicated in your initial questioning that we're here on the summary judgment motion, which is, in fact, what got us here. But we are here because Plaintiff or an appellant has appealed from the order denying a motion for reconsideration. Well, I wouldn't. We can sort that out. We understand that argument. But given the limited time, could you, you're saying that he didn't raise all of these issues in will? I'm simply saying that Plaintiff chose the course here of, instead of appealing from the final judgment, it was a final judgment entered on February 28th by the district court granting the summary judgment. Instead of Plaintiff, appellants then chose to do, to take the course of a motion for reconsideration, which the court said upon reviewing the argument submitted simply didn't have any merit and didn't bring anything new and really had no basis for bringing that motion. They chose that course. It happened to extend beyond a period of time when they filed for their appeal. I think we understand the argument. I don't want to interrupt my colleagues thinking on it. But we know that. And because there are two areas that at least two of us seem to have questions about. Okay. In the limited time, could you address on the excessive force aspect why there isn't a tribal issue as to how at least some of these deputies engaged in excessive force? I think, Your Honor, with respect to that, as the district court viewed this, when they were submitted the uncontroverted testimony as they had signed, as Judge Stotler has signed in her order, it's simply the only credible evidence that has been submitted is the testimony here from the plaintiff. I don't think she believed them. She simply found that there was that the only other evidence contradicting the testimony here, she reviewed the videotape, was that of Mr. Lawley. Well, so what's wrong with that? I mean, how many one-on-one police brutality or officer misconduct claims have you been involved in? It's simply not enough. It's simply not enough in this instance to raise it to that, to the standard necessary in order to present this 19- Why? He says they beat me. Why is that not enough to raise a question about whether they beat him? Well, in this instance, he sued five, seven individuals who he says beat him. As to each of those individuals, he can't point to any one of them and say he beat them. How would he? I mean, look, here's a guy I saw the videotapes aren't that clear, but at least there's a mob of officers surrounding this guy. Now, what's he supposed to do? Take badge numbers and IDs when he's being pummeled. He there's the objective corroboration that he suffered injuries. Correct. This isn't a guy who says, you know, I got whacked upside the head and whatever. And there's no sign of injury or whatever. There are objective there's objective evidence of injury. And to say, well, it's only his word against the cops. It's always going to be the individual against the one or more officers. The question is whether that gets sorted out on a on a credibility issue. And you're saying, well, just that he's it's only his word against all the officers. I am concerned that there's no, you know, no proffer from the other people in the holding cell. But I don't know the circumstances of why that's missing. But I'm still interested in why you suggest that the word of somebody who clearly suffered injuries is not sufficient to create a tribal issue. Because what we what we look at here under the 1983 standard is is the objective reasonableness of the conduct of the officers here in what they were doing and why they and why they were having to act. There's no doubt we had physical contact with Mr. Wally. He brought that contact on himself in resisting and failing to. How do we know that? How do we know that we know that from the officers say so? He says he didn't. He says that's not what happened. Now, why do you tell us that there's no issue when he says one thing and they say the other? Because in the circumstances that are presented and you have to look at again, you don't look at it from 2020 hindsight. You look at it from from the hindsight of the officers there. The 2020 hindsight. What does that have anything to do with how this came about? Whether he was resisting, whether he was doing that or whether he just asked, as he says, meekly, may I have my food? And then they got him for contempt of cop is what he says. It's as presented. You have a group of officers who testified reports that were written. And I'll be if you you know, if if you simply think they made all of these up, I can't convince you otherwise. You don't have to convince anybody of anything. The question is, is there a dispute of fact? That's the question of summary judgment. As to whether or not any one of these individual officers physically kicked, struck or hit him with a baton. There's no dispute of fact as to that. I don't believe there's any dispute as to that. He can't establish any of those elements. The officers have denied doing it. You can't establish that that particular officer did it. There's no other corroborating evidence that he's provided. So there is no question of fact at this point. Now, you're saying that there is there is a question of fact as to why they beat him. But there's no question of fact as to each individual. Well, I don't like using the term beat him. I mean. Well, that's what he says. That's why it raises a question of fact. You may not like it, but that's what he says. All right. But you say that the only real question of fact, the only the only place where there's no question of fact is with respect to which of the officers beat him. Is that your position? I don't believe there's a question of fact at all as to what as to any other quote beating that he's alleging that he's that he's sustained. Suppose somebody else said there was a one witness in the jail cell who said what he says. Would there then be a question of fact? I don't know what that other witness would be saying exactly what what the plaintiff says. Word for word, it may it may present that a question of fact, I will acknowledge. OK. On the medical needs that judges Scanlon raised and concerns me to the nurse clearly identified the diabetic need. There's no dispute that she was aware of it on his triage intake and release for an intake form. I came in transformed because it indicated he was a diabetic. Right. And it was placed on there. He wasn't a medical bookie, though. He was he was brought in and placed in the holding cell. But at least the evidence is that she was aware of his diabetic need and need for food. Is that correct? The truth is, this is a triage nurse. Yes, she was made aware of the fact that Mr. Lawless, she couldn't verify that by any medical records other than his own statement. Now, in the process, when in the triage process, does the and that even though he wasn't brought in as a medical need prisoner, what what happens to that information when a triage nurse is given the information that this person is diabetic and is going to need food on a on a regular basis? Once he is housed, he is seen regularly by the medical staff. Medical staff controls all his medical treatment. They keep right in this case medical security doesn't doesn't see his his medical chart for medical treatment includes food. In the case of a diabetic, if their orders are on the chart, what he what it would require is a doctor's actually issuing orders. Once he is seen and orders issued as to whether or not he was to be given certain foods, double meals, something of that nature. And then there's is there is there any evidence in the record as to what happened other than his statement that she promised that he would get a sandwich or get something? No. Other than he was seen and examined by the nurse after the incident. Now, on the videotape, it appears that there is a woman and I took it to be the nurse. But is that who that was? Yes. And is there any evidence in the records why she shows up? This is when he's in the medical cell. She's examining him at that point for the because of the pepper spray that was used. And she was brought in because policy policy requires decontamination for pepper spray. The only other issue that I have just a little bit of time left on the clock here on the deliberate indifference issue. Again, there's nothing in the record to it as far as any other testimony other than Mr. Lawley's of his medical condition. But there is testimony that he told the officers who he says beat him, that he was a diabetic and needed food and nobody did anything about it. Well, again, the officers aren't aren't there for dealing with things other than security. So if he were bleeding to death on the floor of the cell, they wouldn't be there for that. No, they would then call the nurses. And if he said, I need food, medically, a lot of the inmates will make those demands. And therefore, because a lot. So the so the you then ignore them. I don't say they ignored it. He comes. He he is going through the process. What does that mean? He's in there. How is he going through the process of getting food that he needs? He's moving as he's being booked through. He presented with the reluctance and the resistance that then caused his whole process to be interrupted. OK. All right. Thank you. Thank you. In my brief remaining time, let me just focus in on two issues. And that would highlight the fact that there are issues with that. For example, the baton. Mr. Lally is unequivocal when he says he was hit at least three times with a baton. They're saying, oh, we don't have any batons out there. They're all locked up, although it's been said in the record, but it hasn't been said as confident evidence. But none of the deputies are admitting to ever seeing a baton. Now, one of two things that's happening here, either Mr. Lally's lying or all those officers who had a very close view are lying about whether or not he got hit with a baton. But one of the things that doesn't really matter for this purpose. Well, because it tends to show that there's a tribal issue of fact, say, at page 337 of the record, you'll see something that looks an awful lot like a back that's been hit with a baton. So if the officers are lying about using a baton, they're lying about the force that was used. No one's admitting to it. The only force that they admitted to was one officer admitted to punching him twice in the lower back and the lower rib. What role does it play or what's the function of the court in determining who's lying on summary judgment? It isn't. That's the point. That's why this should have been submitted. Why are you telling us the officers are lying? What's the difference? There is an issue as to who's telling the truth. And is that a proper issue to be resolved on summary judgment? No, of course not. That's why I'm raising it. That's the point. It is not. You have not. You've not sued the nurse on the medical needs, nor have you argued or challenged any policy of the county with respect to this triage. Well, the call of practice that they've just been describing. The call of the questions that was presented to the prior attorney was basically a Heller argument. They basically said that because there's no underlying violation of a constitutional right, that there isn't any municipal liability and there isn't any supervisory liability. And if you look at the separate statement that the defendants presented, they presented no issues of fact in that area. So what happened is the prior counsel addressed the underlying constitutional. Well, but what about the complaint that was filed? Was there a complaint that alleged that there was an unlawful county policy that was being implemented in the medical indifference category? There was custom policy and practice with respect to the excessive force. I don't recall that there was anything specific to not providing medical care, other than the fact that when violations of rights were taking place, they weren't being adequately reviewed. But you didn't appeal your Monell claim. I mean, assuming that was a Monell statement of claim, you didn't appeal that, did you? Well, actually, we appealed the entire dismissal. And my contention once again is that the prior attorney answered the call of the motion, which was there was no Monell violation because there was no underlying constitutional violation. The defendants actually raised the Heller argument in their motion, and that is where the prior counsel went. Now, what I suggest is, is that the entire matter should be returned. And if the other side wants to bring a motion that's specific to the Monell claim or the supervisory liability claim, that they be permitted to do, at which point the problem is in your brief. I don't think you argued the Monell claim in the brief. I think in my brief, not having it in front of me right now, the gist of that argument, if it's not there, then it would be in the reply brief, is that they made a Heller argument. And the call was that of the motion was that there was no Monell claim because there was no underlying constitutional rights violated. And if, in fact, that gets turned around, then you're back at square zero. And for that reason, I think it would be unfair as a procedural matter to not return the entire matter and let us address those issues squarely. Those weren't the issues that were called for. It was a Heller argument that was made. And if you look at the separate statement that was presented by the defendants, and it was signed off by the Court, the Court never even went to those issues. It was just assumed that because there was no underlying constitutional rights violated here that that got swept away. And what I would ask again is that if and when this Court decides this case and if it decides to return it, that it return it en masse, in whole, so that we can address those issues. Because, frankly, since that case, we've developed quite a bit of Monell evidence. This is not our only case against the Orange County Jail. I want you to know that. Thank you, counsel. Thank you.
judges: Reinhardt, O' Scannlain, Fisher